UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17-CR-131-1 (JDB) |
| | : | |
| v. | : | |
| | : | |
| JUAN R. MCCULLUM | : | Sentencing Date: 3/8/2018 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

1. The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this memorandum in aid of sentencing for Juan McCullum ("McCullum"). As discussed below, **the government recommends that the Court accept the Rule 11(c)(1)(C) plea and sentence the defendant to agreed-upon sentence, of one year and 361 days incarceration, with execution of sentence suspended as to all but one year and one day incarceration, to be followed by two years of supervised probation with several special conditions of probation.** As discussed herein, the agreed upon plea agreement reached by the parties is a fair disposition of the case, and is below the maximum sentence under the statutes of conviction.[1] To assist the Court in determining whether to accept the guilty plea in this case and the proposed sentence, the government relies on the following points and authorities and any other points and authorities that may be cited at the sentencing hearing. The Government also is attaching victim impact statements from two of the victims in this case, Delegate S.P, at Attachment 1, and J.B.S. at Attachment 2.

---

[1] The government disputes the Presentence Investigation Report ("PSR")'s calculation of the applicable sentencing guideline range (as discussed at page 27 of the PSR); nevertheless that calculation should not affect this Court's decision to accept the plea agreement.

1

**I.    Factual Background**

2.     Defendant McCullum is a non-practicing lawyer who served as a Congressional staffer from September 2013 until September 2016. U.S. House of Representatives Delegate S.P. ("Delegate S.P.") hired McCullum in April 2015 to be her Legal Counsel. Co-defendant Dorene Browne-Louis ("Browne-Louis") was employed by Delegate S.P. in the same office starting in January 2015, and the two overlapped together through April 2016. McCullum and Browne-Louis became friends and socialized together in and outside the office. While in the office both McCullum and Browne-Louis became frustrated and believed that Delegate S.P. had mistreated them.

3.     On March 22 and 23, 2016, McCullum offered to assist Delegate S.P. in repairing her malfunctioning personal iPhone, and she entrusted her phone to McCullum for this purpose. The iPhone was password protected, and after Delegate S.P. provided the password to have it repaired, McCullum searched through the contents of the phone without authorization. The iPhone contained historical data and images, as well as work-related communications. Included in the data and images were nude images and videos of both Delegate S.P. and Delegate S.P.'s husband, J.B.S., which Delegate S.P. had maintained as private. The stolen material included nude images of Delegate S.P. and J.B.S., as well as sexual images (collectively "Nude Images and Video"). As McCullum was searching Delegate S.P.'s iPhone, he stole and copied the Nude Images and Video without her permission or consent. As part of this process, McCullum input the iPhone password to access the Delegate S.P's iPhone on multiple occasions to defeat the auto-lock feature of the device. When he returned the iPhone to Delegate S.P., he did not disclose to her that he had used her password to search the phone or that he had taken material from the device.

4. Browne-Louis left the employ of Delegate S.P. in April 2016. After leaving, Browne-Louis assisted McCullum in obtaining a new job as a Congressional staffer for another member in the House of Representatives. McCullum left the employ of Delegate S.P. in June 2016. When he did so, he maintained possession of the Nude Images and Video that he had stolen from Delegate S.P.

5. Shortly after leaving Delegate S.P.'s employ, McCullum began a covert effort to disclose the Nude Images and Video to harm Delegate S.P. and negatively affect her re-election. Throughout 2016, as McCullum knew well, Delegate S.P. was engaged in a primary race, with the primary election set for August 6, 2016. As part of his clandestine effort to thwart Delegate S.P.'s re-election, McCullum took a number of calculated steps to hide his identity and distribute these images in a way designed to cause the most harm to Delegate S.P. Among the steps taken by McCullum included:

(1) On July 2, 2016, McCullum created a Hotmail email account using the fictitious name "Susan Ricenville" (the "Ricenville Hotmail account"). After McCullum opened this Hotmail account, he opened a Google email account in the fictitious name of "Susan Ricenville" and set the Ricenville Hotmail account as the back-up/recovery email account for the Google account. When McCullum opened the Ricenville Google account, he listed another fictitious email account -- which he had previously opened—as the backup/recovery email account.

(2) Upon opening the account, McCullum sent directed derogatory emails using the "BCC" line to send the Nude Images and Video as attachments to a number of high-profile political persons in Delegate S.P.'s Congressional district who McCullum knew were personally known by Delegate S.P., including the sitting Governor of the

jurisdiction where Delegate S.P.'s district resides. The emails were written to mimic an English dialect that is particular to Delegate S.P.'s district, and in the text of the emails, McCullum pretended to be a concerned female voter in Delegate S.P.'s district who was urging constituents not to vote for Delegate S.P. because of the images.

6. Between July 2 and 22, 2016, using the Ricenville Hotmail account, McCullum sent at least 11 email messages to multiple persons, including politicians in Delegate S.P.'s Congressional district, members of the media, and other persons known to Delegate S.P. In at least ten of these emails, McCullum attached one or more of the Nude Images and Videos he had taken from Delegate S.P.'s iPhone without Delegate S.P.'s permission or consent. During that period, McCullum accessed the Ricenville Hotmail account regularly, using his cellular phone and computer. In these communications, McCullum (through the guise of Ricenville) consistently voiced opposition to Delegate S.P. and attempted to use the communications to undermine Delegate S.P.'s re-election campaign. In some of these communications, McCullum intimated that Delegate S.P. and J.B.S. were engaged in child endangerment because they were exposing their young child to nudity in the home. A number of the emails sent by McCullum from the Ricenville Hotmail containing the Nude Images and Videos were sent directly to Browne-Louis' email account, not using the BCC line.

7. While McCullum was distributing Nude Images and Video from the Ricenville Hotmail account, he was in regular communication with Browne-Louis by phone and text message about his activities. For example, McCullum texted with Browne-Louis within minutes of sending the first message from the Ricenville Hotmail account that the initial email to the Governor had bounced back. Browne-Louis also made several text message requests to

McCullum to send her Delegate S.P.'s nude images and video to her email account, which he did by sending emails and images directly from the Ricenville Hotmail account to her email account. In a deleted text message that was forensically recovered from Browne-Louis' cellular phone, McCullum, on the same day he sent Nude Images and Video to a media outlet using the Ricenville Hotmail account, told Browne-Louis "Somebody will pay for how we were treated."

8. As McCullum was distributing the images through the Ricenville Hotmail account, Browne-Louis took efforts to assist the primary campaign of "Candidate X," Delegate S.P.'s main competition in the primary election. On July 2, 2016, Browne-Louis communicated with a person ("Mr. A") working on the campaign of Candidate X: "Just tell [Candidate X] ["Mr. B"] he will know who he is. Aggressive, energetic, loud, well-dressed, former leg employee, Hispanic, SDA affiliated campaign guru." On July 3, 2016, Browne-Louis sent the following text message to Mr. A: "[Candidate X] needs a social media person to constantly boost up his FB and website. Too laid back I'm not hear[ing] anything about him! Needs to get out much more." Then on about July 8, 2016, Browne-Louis also distributed a sexual video of Delegate S.P. that she received from McCullum, to Mr. A, who then distributed the video to a reporter based in Delegate S.P.'s Congressional district. The video was not published.

9. McCullum's efforts to malign Delegate S.P. through the Ricenville Hotmail account had some efficacy: some of the persons who received the messages and images reported (and forwarded) them to Delegate S.P., who in turn referred the matter to federal law enforcement. The distribution of these private images to persons known to the Delegate had profound and harmful effects on the Delegate, her husband, and family. See Attachments 1 and 2. Those scars last to the current day. By July 17, 2016, Delegate S.P. had become aware of some of the Nude Images and Video, but the material had not been broadly re-circulated, and the

matter was not reported in the media. McCullum, however, persisted in his efforts to malign Delegate S.P. and negatively impact her re-election.

      10.      On or about July 17, 2016, McCullum created a Facebook account using the same fictitious name "Susan Ricenville" (the "Ricenville Facebook account"). Again, McCullum took steps to attempt to hide his connection to the account: he registered two fictitious email accounts to the Facebook account, including the Google Ricenville account. After establishing the account, McCullum also used a mobile virtual private network (VPN), which also had the effect of obscuring the user's IP address. Between on July 17 and 21, 2016, McCullum used the Ricenville Facebook account to pretend to be a local resident ("Susan Ricenville") from Delegate S.P.'s district, and thereby "friended" numerous other Facebook accounts, including the Facebook accounts of politicians in Delegate S.P.'s Congressional district and politicians who were competing with Delegate S.P. in the primary and general elections. McCullum populated the Ricenville Facebook account with innocuous posts and photographs designed to portray the image of a middle-aged, local female resident from Delegate S.P.'s district. Once again, Browne-Louis was in communication with McCullum during this period. Among those communications, Browne-Louis provided McCullum with confidential Delegate S.P. campaign documents that identified key supporters of Delegate S.P. in her Congressional district. Thereafter, McCullum "friended" some of these persons, and persons connected to these persons, through the Ricenville Facebook account. While McCullum made the Ricenville Facebook account a public account (*i.e.* viewable to the Facebook community), he took the additional step of blocking access to his account by Delegate S.P., her husband, and other persons associated with their accounts. The effect of blocking this access would prevent these persons from commenting or seeing the content of the Ricenville Facebook account, and also prevent them

from communicating with the account.  Blocking these accounts would also delay the ability of Delegate S.P. and her husband from reporting offensive conduct to Facebook in order to shut down the account for violations of the terms of service.

11.     Starting on July 20, 2016, McCullum uploaded several of the Nude Images and Videos taken from Delegate S.P.'s iPhone to the Ricenville Facebook account.  When he did so, McCullum used a mobile VPN.  Thereafter, McCullum used the Ricenville Facebook account to widely distribute several of the Nude Images and Videos via Facebook private messages and posts, including images that McCullum had not distributed through the Ricenville Hotmail account.  While sending these images privately, and before the images were reported in the media, McCullum told Browne-Louis of his use of the Ricenville Facebook account.

12.     Thereafter, McCullum distributed some of the nude Images and Video on a public Facebook community page that was viewable by thousands of residents in Delegate S.P.'s Congressional district.  As part of this dissemination, McCullum urged the Facebook viewers of the images to defeat Delegate S.P. in the upcoming election.  He also encouraged persons in the Delegate's Congressional district to redistribute and republish the images to other persons, voters, and other internet groups.  Consistent with this effort, McCullum succeed in distributing the Nude Images and Video widely, and some media outlets even published Nude Images to the public.

13.     The harmful effect of these public disclosures on Delegate S.P., J.B.S. and their family, was, to put it mildly, tremendous.  See Attachments 1 and 2.  Digital sexual victimization is uniquely debilitating -- the internet never forgets, and the public exposure of intimacy into the public realm can have profound effects on the victim and their families that are akin to sexual assault.  See generally D.C. City Council, Committee Report on Bill 20-903: "The

Criminalization of Non-Consensual Pornography Act of 2014" at pp. 2 to 3, located at http://lims.dccouncil.us/Download/32304/B20-0903-CommitteeReport1.pdf (legislative history for 22 D.C. Code §3051 *et seq*., finding "The kind of harm from this kind of exposure cannot be underestimated . . . [.] [a]t worst the harm . . . has been so severe that victims committed suicide [] [f]or those who live through it, the devastating effects last for years and impact victims' emotional wellbeing, physical safety, personal relationships, and employment").  In addition, Delegate S.P. and J.B.S. were subjected to the additional stress of public ridicule and questioning during a political campaign.  Indeed, if the invasion of privacy in circulating the Nude Images and Video, combined with the attack on Delegate S.P.'s fitness for office were not enough, McCullum's comments questioned Delegate S.P.'s and J.B.S.'s morality and fitness as parents - suggesting their children should be taken from them – which inflicted significant psychological trauma well beyond that which was levied on Delegate S.P.'s marriage relationship or public persona.  The effect was even more pronounced on Delegate S.P.'s children who were also forced to handle the issue with their peers and the public.  It should therefore be expected that the victims in this case feel as they do.  See Attachments 1 and 2.

      14.     McCullum and Browne-Louis were identified by law enforcement after a significant, forensic-based investigation revealed the on-line digital fingerprints of the defendants.[2]  After law enforcement discovered McCullum's involvement – which led to a search warrant being executed in McCullum's home for his electronic devices– they interviewed McCullum as they searched his home.  In that voluntary interview, McCullum lied to federal law

---

[2] In addition to revealing electronic links between McCullum and the fictitious accounts, the investigation uncovered multiple Nude Images and Videos, as well as communications with Browne-Louis, on McCullum's home computer and personal cell phone. The investigation also uncovered deleted messages and emails from Browne-Louis' cell phone.

enforcement: he denied stealing information from Delegate S.P.'s phone; and denied knowing anything about Susan Ricenville, the Ricenville Hotmail account, or the identity of any person(s) who may have distributed the images. As the Court is aware, Browne-Louis similarly lied to law enforcement and the Grand Jury about her role and her knowledge of the offenses, and even deleted text-messages from her phone to thwart law enforcement.

## II.     The Offenses of Conviction and the Plea Agreement

15.     The four offenses to which defendant McCullum is pleading guilty are as follows:

(1) Conspiracy to Disclose Sexual Images, in violation of 22 D.C. Code §§ 1805a, 3052;

(2) Attempted First Degree Unlawful Publication of a Sexual Image, in violation of 22 D.C. Code §§ 1803, 3053;

(3) Criminal Computer Access to a Protected Computer (Accessing to View), in violation of 18 U.S.C. § 1030(a)(2)(C); and

(4) Criminal Computer Access to a Protected Computer (Accessing to Copy), in violation of 18 U.S.C. § 1030(a)(2)(C).

16.     The maximum penalties for Counts one and two are a sentence of imprisonment for not more than 180 days and the possibility of a fine up to $1,000; a term of supervised probation of up to five years. The maximum penalties for counts three and four are imprisonment for not more than one year and the possible fine of up to $100,000, or twice the pecuniary gain or loss of the offense, and a term of supervised release of not more than 1 year, pursuant to 18 U.S.C. § 3583(b)(3). The collective maximum sentence for all charges is two years, 360 days incarceration.

17.     The plea agreement in this case is pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and requires this Court's approval before it can be accepted. The

parties in this case have agreed that the defendant be sentenced to a total of one year and 361 days incarceration, execution of sentence suspended ("ESS") as to all but one year and one day of executed incarceration, to be followed by two years of supervised probation. The breakdown of the sentence for each charge is as follows:

(1) For Count 1, a violation of 22 D.C. Code §§1805a and 3052 - 180 days incarceration, ESS as to all, followed by two years of supervised probation (this sentence of incarceration would run consecutive with Counts 2, 3, and 4, but with the period of supervised probation to be concurrent to Count 2);

(2) For Count 2, a violation of 22 D.C. Code §§ 1803 and 3053 - 180 days incarceration, ESS as to all, followed by two years of supervised probation (this sentence of incarceration would run consecutive with Counts 1, 3, and 4, but with the period of supervised probation to be concurrent to Count 1);

(3) For Count 3, a violation of 18 U.S.C. §1030(a)(2)(C) - one year of incarceration, with no period of supervised release (this sentence of incarceration would be consecutive to Counts 1, 2 and 4); and

(4) For Count 4, a violation of 18 U.S.C. §1030(a)(2)(C) - one day of incarceration, with no period of supervised release (this sentence of incarceration would be consecutive to Counts 1, 2 and 3).

The parties have also agreed that the defendant will follow the following special conditions of probation:

(1) The defendant will perform 100 hours of community service;

(2) He will not use the internet to create or access fictitious e-mail or social-media accounts (*i.e.*, accounts not in the defendant's given name) without prior disclosure of the accounts to probation;

(3) He will not use anonymizing applications, TOR software, or Virtual Private Network servers to access the internet without prior permission of probation;

(4) He will not use the internet to threaten, harass, stalk, intimidate, or cyberstalk any person, including (but not limited to), Delegate S.P., J.B.S., members of their family, and Delegate S.P.'s staff;

(5) He will have no contact (either directly or indirectly) with Delegate S.P., J.B.S., or their family;

(6) He will abide by a physical stay away from Delegate S.P., J.B.S., and their family, and stay beyond 100 feet from them at all times;

(7) He will not post any nude images or video of Delegate S.P., J.B.S., and family;

(8) He will not publish any nude images or video of any other persons without prior permission of probation; and

(9) He will delete all sexual and/or graphic images of S.P., J.B.S., and their family, including, but not limited to, from any digital devices, online accounts, or otherwise in his possession, custody, or control.

18. The parties have acknowledged that no U.S. or D.C. Sentencing Guidelines apply to Counts one or two of the Superseding Information because the D.C. Voluntary Sentencing Guidelines do not cover misdemeanor offenses. The U.S. Sentencing Guidelines (2017) ("U.S.S.G.") do apply to Counts 3 and 4. The parties agree with the PSR writer that the defendant has a Criminal History score of 0, and is in Category A. The parties have stipulated

that the offense level applicable in this case is Level 12 (after acceptance of responsibility), and that the offenses would group under U.S.S.G. § 3D1.2.[3] Using this analysis, the sentencing analysis would be 10-16 months incarceration, with the conduct falling in Zone C, with a recommended sentence of imprisonment, or a period of home detention or community confinement.  The PSR writer has concluded the applicable offense level is level 9, which calls for a sentence of 4-10 months incarceration, with the conduct falling in Zone B, with a recommended sentence of imprisonment, a period of home detention or community confinement, or intermittent confinement.  The proposed sentence is within the statutory maximum penalties for these offenses, and within the stipulated guideline range agreed to by the parties.  The proposed sentence for Counts three and four varies slightly from the guideline range determined by the PSR writer, but there exists significant reasons to accept the variance to the guideline range if the Court were to accept the PSR writer's interpretation in this case.

### III.   Legal Background

19.    Title 18, United States Code, Section 3553(a), provides the factors that the Court must consider in sentencing a defendant.   These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established by the [United States] Sentencing Commission ["USSC"]. . . .;
> (5) any pertinent policy statement (A) issued by the [USSC]. . .;

---

[3] As noted above, the PSR calculates the guideline range as level 9 based on its review of the enhancement applicable under U.S.S.G. §3A1.2(b).  The government concedes there are arguments for and against the applicability of the 6 level enhancement because the indicted conduct (Cyberstalking) is a Category A offense.

  (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). The court must consider each of these factors and can consider facts that are proven to the Court prior to and at sentencing.

  20. It is well settled that the burden to prove facts in support of a sentence is the preponderance of evidence standard. United States v. Dorcely, 454 F.3d 366, 371-372 (D.C. Cir. 2006); United States v. Dozier, 162 F.3d 120, 123 (D.C. Cir. 1998). This Court can determine a legal sentence based on all manner of information, including uncharged conduct and any § 3553(a) factor. See United States v. Watts, 519 U.S. 148, 156-157 (1997) (per curiam); *accord* Williams v. New York, 337 U.S. 241, 246-47 (1949); Wasman v. United States, 468 U.S. 559, 564 (1984) (same); see also Alleyne v. United States, 570 U.S. 99, 116 (2013) (recognizing "the broad discretion of judges to select a sentence within the range authorized by law"). In the context of a Rule 11(c)(1)(C) plea, the government's determination of the plea and proposed sentence is to be given deference by the Court. See, e.g., In re Ellis, 356 F.3d 1198, 1209 (9th Cir. 2004 (*en banc*) United States v. Ammidown, 497 F.2d 615, 621, 622 (D.C. Cir. 1974) ("We start with the presumption that the determination of the United States Attorney is to be followed in the overwhelming number of cases. He alone is in a position to evaluate the government's prosecution resources and the number of cases it is able to prosecute").

  **IV.** **Analysis of the Conduct**

  21. The defendants in this case attempted to subvert an election for the U.S. House of Representatives and intentionally caused emotional harm and pain to Delegate S.P., J.B.S., and their family. This conduct was done with malicious intent and significant effort and planning. McCullum misused a password he had been trusted with to repair Delegate S.P.'s private iPhone

(a protected computer), violated the trust and sanctity of a Congresswoman's privacy, accessed personal and work related material on her iPhone, and then stole private material for later use in a scheme to influence the democratic process.  The effort was timed to have maximum impact on the primary election (and thus to maximize the personal impact on Delegate S.P. professionally and personally, as well as J.B.S. and their family).  McCullum took significant steps to broadcast and distribute the images widely, even using the media to further his goals.  In sum, McCullum's plan was a calculated effort designed to hurt and betray someone who had given him a significant professional opportunity- and whom he had persuaded to trust as legal counsel in her office.

22.     While McCullum failed in his effort to throw the election, he nonetheless succeeded in causing significant harm and pain to Delegate S.P., J.B.S. and their family.  As the victims' attached victim impact statements make clear, the defendant's conduct was hurtful and it caused harm to Delegate S.P.'s entire family.  See Attachments 1 and 2.  Protection of victims who have had their highly intimate moments stolen, violated and published, as well as protection of our democratic process, requires stern punishment of McCullum to punish his conduct and deter others who might be tempted to do the same.

23.     Against this criminal conduct, the government recognizes that defendant McCullum has accepted responsibility for his actions short of trial, and the proposed sentence is in the public interest for several reasons.  First, the conduct, while significant and harmful, did not result in physical injury or the tipping of a democratic election.  Second, the case provides closure for the victims who, because of the plea, will not have to have their private images republished and broadcast at trial, or be re-victimized by having to testify in a public trial about sensitive details about their intimate family lives.  This is a significant consideration for the government and the victims, and the victims are supportive of this disposition.  Third, the defendant in this case has no

criminal history score, is well educated, and employable: as such he could reasonably seek, even after a trial, a more lenient sentence than called for under the Sentencing Guidelines. Lastly, the government recognizes that the defendant has a significant and public fall from grace that will follow him for the rest of his life and impact his future professional opportunities. McCullum came from humble beginnings to become a lawyer who once advised leaders of our country- and now his story, which has exposed his untrustworthy and malicious character, is a cautionary tale for all who might be tempted to do what he did.[4]

24.     Undersigned counsel has consulted with the victims in this case, and after negotiating this plea agreement with the defense in good faith, the United States believes that the proposed plea is fair and appropriate.

## V.     Analysis of § 3553 Factors

25.     The government herein reviews the sentencing factors established in 18 U.S.C. §3553(a), and believes the proposed sentence is appropriate after taking into account these factors.

### A.     18 U.S.C. §§ 3553(a)(1), (a)(2)(A) – Nature and Seriousness of the Offense; Need for Just Punishment; and History and Characteristics of the Defendant

26.     The conduct in this case was serious, premeditated, sophisticated, and designed to harm Delegate S.P., her family, and the body politic. McCullum not only attempted to hide his conduct from law enforcement and the public, but he also lied to law enforcement after he knew his criminal activity had been discovered. The U.S. Capitol Police and the U.S. Department of Justice also invested significant time and resources to investigate, indict, and

---

[4] Even though the defendant is a non-practicing attorney, the government recognizes his conduct and convictions will likely inhibit his ability to practice law in the future.

prosecute this matter.  In short, McCullum's intent was to harm Delegate S.P. and tip the election.  That he failed in his second objective is beside the point: he hid his real persona while taking joy in the pain and suffering of others.

27.     The harm inflicted by the defendants was real, and political: as J.B.S.' stated, "one thing was clear someone was trying to destroy my family and throw a wrench in the upcoming Primary election. Someone was actively waging a destructive smear campaign and trying to sway my community against my Family."  See Attachment 2.  Delegate S.P. is an elected official, as well as a wife and a working mother with young children, who had to suffer through the indignity of having to explain to her children how their privacy had been invaded, private information stolen, and why the public, their friends and family would forever know intimate details about their family.  Similarly, the harm endured by J.B.S., and Delegate S.P.'s family were, in McCullum's view, merely acceptable collateral damage.

28.     The defendant's criminal history and characteristics are mitigating factors against a more severe punishment.  The defendant has a zero criminal history score, and has obtained a law degree and worked for his entire adult life.   He has come from humble beginnings and has a large and extended family.  The government believes that McCullum has the potential for rehabilitation, and that he can return to being a law-abiding member of society.

### B.     18 U.S.C. §3553(a)(2)(B)- Deterring Others from Criminal Conduct

29.     The recommended sentence, which includes a year and a day of executed incarceration time, will serve as a strong deterrent against those who might seek to commit the same crimes.  The government seeks this sentence because it will send the message to others that if you engage in on-line stalking, using nude and sexual images to harm others (much less try to unlawfully affect an election), you will be caught and you will go to jail.  The deterrent message

will also be sent through the significant special conditions of probation that McCullum must adhere to for an additional two years after he is released from prison.

### C.	18 U.S.C. §3553(a)(2)(C)- Protect Against Defendant's Future Crimes

30.	The recommended sentence will also help change the defendant's criminal mindset.  The defendant's conduct in this case was not impulsive or isolated: he began by covertly accessing a Congresswoman's protected device, stole information and material that did not belong to him, and then set up an elaborate plan to distribute the stolen material to influence an election.  The punishment proposed will force the defendant to confront his criminality while serving jail time, and force him to perform multiple weeks of community service as penance for his conduct.  The government also recognizes that the defendant has suffered other consequences from his conduct: he was forced from his job with another Congresswoman after his criminal activity was discovered, and the publicity surrounding his criminal activity will impact his professional opportunities in the future.

### D.	18 U.S.C. §§ 3553(a)(2)(D); (a)(3) and (a)(6); Defendant's Need for Medical Care, Training, and Treatment; the Kinds of Sentences Available; and Need to Avoid Unwarranted Sentencing Disparities

31.	The defendant has no known medical issues or need for treatment or additional training or education.  Government counsel is unaware of 18 U.S.C. §1030 cases similar to this one, where the defendant stole nude and sexual images from a protected computer, and then digitally distributed those images to harm a candidate for office before an election.  The D.C. Code provisions to which the defendant pled guilty were passed in May 2015, and there are no comparable cases to the conduct here.  The agreed upon sentence, therefore, does not create any known sentencing disparity.

17

> **E.   18 U.S.C. §§ 3553(a)(3), (4), (5) and (7) - Sentencing Options Available, the U.S.S.G. Guidelines and Policies, and Restitution for the Victims**

32.     The defendant can be lawfully sentenced to prison, community confinement, home confinement, and a fine.  He also may be sentenced to a period of probation of not more than five years for each offense, see 18 U.S.C. §3561(c)(2) and 16 D.C. Code §710, and a fine of up to $1,000 for counts one and two, and for counts three and four a fine of up to $100,000, or twice the pecuniary gain or loss of the offense.  The Court may also sentence the defendant to a term of supervised release of not more than one year for Courts three and four.  See 18 U.S.C. § 3583(b)(3).  As discussed above, the sentencing guideline has been agreed by the parties for Counts three and four to be level 12 (with a range of 10-16 months), but the PSR writer has concluded level 9 is appropriate (with a range of 4 to 10 months).  The defendant must also be assessed a $50 special assessment fee for each of Counts one and two, see 4 D.C. Code §516 and a $25 fee for each of Counts three and four. See 18 U.S.C. 3013.  The victims are not seeking restitution in this case.

> **VI.   Conclusion**

33.     In light of all of the above factors, the agreed upon sentence of one year and 361 days incarceration, execution of sentence suspended as to all but one year and one day incarceration, to be followed by two years' supervised probation with agreed upon special conditions, is a fair sentence in the public interest that balances the appropriate sentencing factors.   Importantly, the victims are supportive of the plea and the disposition of this case.

34.     WHEREFORE, based upon the above facts and argument, and the evidence presented to the Court, as well as the information reflected in the Pre-Sentence Report and the

material contained herein, the United States respectfully requests that the Court accept the defendant's guilty plea, and sentence the defendant to the agreed upon sentence.

        Respectfully submitted,

        JESSIE K. LIU
        United States Attorney
        D.C. Bar No. 472845

By:    _____/S/_____
        TEJPAL S. CHAWLA
        D.C. Bar No. 464012
        YOULI LEE
        N.Y. Bar No. 4064028
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7280 (Chawla)
        (202) 252-7705 (Lee)
        Tejpal.chawla@usdoj.gov
        Youli.lee@usdoj.gov